21, 32, 26, 21, 32, 37. Monica Jackson versus GE. Oral argument as follows. 15 minutes for the defendant, GE. 5 minutes for interested parties. 15 minutes for the intervener, Monica Jackson. Miss Bond for the defendant arguing today. May it please the court. Good morning. The case before you today regards the enforcement of a settlement agreement reached by the parties during a settlement conference with Magistrate Judge Bowman here in the Southern District. I represent General Electric, GE Aviation is what they go by in this case. Now because of the unusual posture of this case with consolidated appeals, GE is technically an appellant and an appellee. Plaintiff is an intervener and an appellee. So I'll just use plaintiff and defendant to keep it simple. There are two issues before the court. One, whether the parties reached a meeting of the minds as to all material terms. And two, whether the plaintiff accepted the settlement that was reached. Now the district court found that the parties did in fact reach a meeting of the minds as to all essential terms, but did not enforce the settlement agreement because it found that the settlement agreement was an option contract and that the plaintiff had not manifested her intent to agree to the terms. Just a brief factual background to put the two issues into perspective. Plaintiff was an employee of GE at the time she filed the underlying lawsuit and it was a discrimination claim. During an all-day settlement conference with the magistrate, the parties negotiated the settlement agreement at issue today. At the end of the day it was put on the record and in advance of the settlement conference, counsel for GE, myself, sent a template standard settlement agreement that GE uses to plaintiff's counsel. Is that what you're attempting to enforce is the written proposed agreement? No, Your Honor. I believe what would be enforced today is the oral agreement reached at the settlement conference. Now that includes the basis for that oral agreement is the written template plus the changes and additions that Judge Bowman specifically mentioned. So you are asking us to enforce the written agreement as well, right? Well, it wouldn't be the written agreement in the form that it was sent to the plaintiff's counsel prior to. It would be that agreement with the modifications and additions that Judge Bowman specifically mentioned. Those modifications didn't have anything to do with the 21 days and the 7 days that were agitated about here, did they? No, Your Honor. So when you said all material terms, isn't the 21 days to consider and the 7 days to revoke part of those material terms? That is not a material term of the agreement, Your Honor. The material terms were those which were stated on the record as additions or modifications. But can we just read the 21 day and 7 day periods out of the agreement? Your Honor, what happens is obviously the intent of the parties was that the plaintiff, when she left the settlement conference, there would be a formal written agreement put together that reflected the party's agreement. She would sign it, which would trigger the 21 days. She would sign whatever is put in front of her? Whatever. I mean, obviously, if there's something to follow that, I mean, you have to review it, you have to make sure it's consistent. You're just saying she has to sign whatever they propose? No, no. In fact... Okay, so there... Go ahead. But you just said, I heard you say, that she would sign it, which would trigger the 21 days. But the 21 days is about considering, not about revoking. I would think that the signing would only, if what you're saying is correct, the signing would be at the end of the consideration period or of some period when she decides to sign. Isn't that the whole issue? That if she has 21 days to, quote, consider, that would seem to say she could consider and sign, or she could consider and not sign, which is what she did. So did I mishear you? No, Your Honor. You said the signing would trigger the 21 day period. That's what I heard you say. I misspoke then. She had up to 21 days. She did not have to take the entire 21 days to consider it. Now, under the law that GE cited, we believe that the 21 days was expired when she agreed to those terms on the record at the settlement conference. She had the opportunity... She didn't consider anything then. Well, she did. She had the agreement in advance, the template agreement. She had all day with her counsel and the judge. And there are several cases cited in our briefs, the Harmon case and the Manning case, both indicated that when the plaintiff verbally assented to the terms at the conclusion of an on-the-record settlement conference, that was their review period, and that then triggered the seven-day revocation. You're saying she gets the 21 days, but she just agreed on the very first day? Yes. Presumably the day of the settlement conference and the on-the-record presentation. Yes. And worst-case scenario, under the trial court's reasoning, she couldn't have finally accepted the terms of the settlement agreement at the settlement agreement because that's when the 21 days started. What does it mean in the proposed written settlement that she also may revoke this agreement at any time within seven days after she signs it? What does that mean? That's the typical ADEA age discrimination language for a proper waiver of age discrimination claims. You have to give them up to 21 days to consider and seven days to revoke. You can revoke it seven days after you consent to it? Yes. Okay, so why isn't it revoked? Because she did not take any action within seven days of accepting the agreement. So what you call accepting is the same as what the template calls signing? No. Well, the template says seven days after signing, and signing never happened. That's correct. Because the parties anticipated there would be a signing that would trigger the revocation period, but instead she indicated her acceptance of the agreement through her performance of the agreement, partial performance. Was GE bound by the agreement? I guess you're saying they were. Yes. As of the mediation and the on-the-record recitation by the magistrate judge. At that point, you're saying that Ms. Jackson accepted, GE accepted, and could not revoke? Correct. GE was on the hook. The Sixth Circuit has held that partial performance is sufficient to constitute acceptance. They've said they're not concerned with whether the parties performed each and every obligation imposed by the settlement agreement. It's because the beginning of performance, or tender of part performance, operates as a promise to render complete performance. So what we have to do is we have to look at Ms. Jackson's actions after the settlement conference. She had up to 21 days to consider, and she could have taken action that indicated she wasn't accepting it yet, but that's not what she did. She took clear steps to accept the agreement. Is there any reason you didn't tender the money? That would seem to have solved this problem. If she took the money, that would clearly be agreement. If she didn't take the money, that would be pretty clear agreement that she didn't. Your Honor, the agreement— Because you were supposed to provide it as soon as possible, right? Isn't that the word in there? But no later than— Correct. —about the time that this all blew up. Is that about right? But her signing the agreement was anticipated as a precondition to the payment being made— But now you're saying the signing wasn't really necessary, right? Because you're saying that she was bound when you all got up from the table. I'll cite the Henley v. Cuyahoga case, which says, It is inconceivable that a plaintiff should be entitled to receive proceeds of a settlement before executing a release of claims. To pay any plaintiff before then would be sheer folly. I believe it would have been malpractice, frankly, for me to tell GE that they should pay Ms. Jackson this sizable settlement payment when she had not actually signed the agreement. In the agreement, there was no— Absent a court order enforcing the oral agreement, there's no general release of claims that GE would be receiving. And so GE wouldn't have received the benefit of its bargain. She needed to completely perform, and then GE would completely perform. But GE did partially perform. We made available to her outplacement services, which she took advantage of and then shortly thereafter obtained alternative employment. She resigned her employment, gathered all of her personal belongings, gave all of GE's property back. She submitted to GE the documents required for payment to be made. There's no way to look at her actions after the settlement conference and not conclude that she was accepting that agreement. And at no time did she indicate an intention to revoke that acceptance. Once her actions, her performance equated to acceptance, it was then her burden to specifically revoke the agreement, and she never did so. In fact, it was never indicated to GE that she was refusing to sign until she obtained new counsel in May of 2020. So under your argument, when could she have revoked the agreement? She could have revoked within the seven days right after this, when everybody got up from the table and had the hearing before the magistrate. She had seven days from that period, that's the seven-day period in the proposed tentative or template agreement? That would be GE's position. But even under the district court's opinion that this is an option contract, as soon as she partially performed, that was her acceptance. And so then she had seven days from that point to revoke. Certainly, at a minimum, as of January 31st, when she officially resigned her employment and then began using the outplacement services provided under the settlement agreement, there can be no question that she accepted as of that point, and so she would have had seven days from that point to revoke. And there is ample correspondence in the record between counsel for GE and Ms. Jackson's counsel at the time, indicating there was no such revocation. We were, in fact, still tweaking little bits of the language in the written agreement, but certainly no indication that her intent was to revoke her agreement. Why are you tweaking parts of the language if everything is settled? Well, that's how it always is, Your Honor. Does that mean it's not settled? Nope. Why are you tweaking? The court cases are very clear. An oral agreement is enforceable, even though a written memorialization of that agreement is to come. You know, lawyers, there's disagreements as to, hey, our agreement was X. This language doesn't... Isn't that what we have here? I mean, she claims that the bonus wasn't included. I think it was the 2019 bonus, and so she said that wasn't included here. There was no mention of the bonus by Ms. Jackson until she obtained new counsel. This was just merely the attorneys trying to work out, okay, what's the proper language to effectuate what had already been agreed to? I see. Okay. We say no mention of the bonus. I don't know what the record reflects. It was not discussed as part of the settlement? In fact... I don't want you to go outside the record, but... No, no. At the settlement conference, it was, in fact, discussed. The district court, the magistrate, Judge Bowman, testified at the evidentiary hearing, and she made it very clear that, she said, they discussed settlement numbers with plaintiff at the beginning of the day, and the number they offered included an amount for the bonus. She said it was never a number plus a bonus. It was always a number that included the bonus. She also said the first number included the bonus, and nothing was said to plaintiff during that settlement conference day that would make her think that subsequent numbers did not include the bonus. The magistrate had no reason to believe plaintiff thought the final settlement amount would not include... The part of the template in paragraph one that says,  you think that doesn't include past accrued bonuses? It had not accrued yet, Your Honor. The evidence in the record is, it would not accrue until you have to be employed on the date it's paid, which would be in April of 2020. So even though it was for 2019, it wouldn't have been paid until April of 2020? Correct. And even more telling, Your Honor, the evidence in the record from her former counsel is that it was specifically explained to her about the bonus, and that the last move that was made at the settlement conference was from plaintiff's side. Hey, look, we're foregoing this bonus. We've got the stock options we're foregoing. We need a little bit more money. And in response to that, GE increased its offer a bit to address those situations. As the trial court found, there is little question that there was a meeting of the minds that the bonus was included in the agreement and that Ms. Jackson would not be entitled to any additional pay. Okay. Thank you. I think I'm over. You are, but we had a number of questions. All right. Thank you. Oh, and I guess I was supposed to tell you specifically that I had five minutes. I had reserved five minutes. I understand that you do, yes. Okay. Thank you. Good morning. May it please the court, counsel. I'd like to make two points and then answer questions. Are you Mr. Steinberg? I am. I represented Ms. Jackson at the trial court settlement. Do you have ethical conflict in this case since you're opposing the position of your former client? No, Your Honor. Tell me why you don't. In our motion that we filed in the trial court, which is contained in the defendant's exhibits, we said we consulted ethical counsel of the Bar Association before taking our position, and we were assured that we were not violating any legal ethics by moving to enforce a settlement that benefited our client and on which we had a lien for attorney fees. First point, decades of Supreme Court precedent hold that Congress expressed a strong preference for encouraging settlement of employment discrimination claims for 50 U.S. at 88. This court has the power to enforce a settlement even if no written agreement is signed. In order to enforce the settlement, the court must conclude that all material terms are agreed upon. We take the position, Mr. Goodman and I, that all material terms of the settlement were agreed upon in the magistrate judge's courtroom and that only nonessential terms were included in the written agreement. Is it a nonessential term that she has 21 days to consider whether she wants to sign the agreement and be bound by it? That's correct, Your Honor. The Second Circuit has held that in this case that is irrelevant. That's a term in the Older Workers Protection Act that relates to an age discrimination claim waiver. One of the claims here that is released is age discrimination along with race discrimination. GE put everything in the kitchen sink into the release. Ms. Jackson never asserted an age discrimination claim. The template agreement covers all claims, not just older workers, even if they were or weren't in, right? The template doesn't say that 21 days is only for the older workers' claims. It does, Your Honor. Let me read it. It's Section 5D, Time for Review. Employee has 21 days to consider the agreement and her waiver of rights under the Age Discrimination and Employment Act. Is that D or E? E is what I'm looking at at page 4. It's up at the top that talks about waiving various rights, but then the Older Workers Act is only in subpart A of E. I'm looking at the top of page 4. Time to review, time to review, and then just near the bottom, well after anything that connects to the Older Workers Act, it says the company has advised her she can consider her decision to enter into this agreement, which covers, as you just said, claims other than ADEA and older workers. That's the modified settlement that you're referring to that we negotiated. The template is in Defendants Exhibit 1. That's the only record reference to the template. Do you know what document that is or what page number that is? I'm sorry, I don't have the page. I can look it up. Go ahead. I take your point. Item 5D. Under the Older Workers Protection Act, the trial court never considered the legislative history of the OWPA, and he didn't cite the only circuit court case that has interpreted this clause. It's a case from the 8th Circuit that holds that this clause does not create an option contract, nor does it create an irrevocable right of acceptance. That case is the Ellison case at 164 F 3rd 1114 in 1999. The court only cited two Ohio cases to support his conclusion, erroneous conclusion, that it was an option contract. He cited a land contract case and a contract case involving the financing of a condominium. Neither he nor Ms. Jackson have cited any case that holds that an employment agreement settlement is an option contract. Ms. Jackson had- You'll need to begin wrapping up, Counsel. I'm sorry? You'll need to begin wrapping up. Yes, I'd like to wrap up by saying that citing the 2nd Circuit case, Powell 497 F 3rd at 131, that holds that this OWPA clause does not apply to a person like Ms. Jackson, who is a sophisticated HR professional who had almost a year to consult with counsel and a full day before the magistrate judge before executing this agreement in open court. Thank you for your patience, Your Honors. Thank you, Mr. Steinberg. We'll hear next from Carla Aikens, who is appearing by video. Hopefully the technology is working well. Good morning. Good morning. Technology is working, not my voice. Thank you for allowing me to appear remotely. I think Your Honors have already addressed a lot of the issues, so I'm just going to briefly summarize why I think that this report was correct. With respect to just looking at the transcript from the day of the settlement conference, it was very clear that Magistrate Bowman stated, and I quote, a draft settlement agreement was prepared by Ms. Bond and circulated to plaintiff's counsel. That agreement would be the basis, you know, moving forward for the agreement, a couple minor modifications and additions. She said so far as modifications, and then that's when they got into the non-discouragement, things like that. The modification did not include anything about the section that Your Honors were talking about, which I very clearly agree with, section E, about the time to review. That never changed in the template. It never changed in any subsequent drafts. So that was the basis. It sounds like sometimes they want to include it and other times they don't. They were including the terms in that agreement that was circulated and also just the things that were addressed. Nothing was addressed with respect to that. There was no reason to because it was already in the draft agreement. As Your Honor indicated, section 4E of that draft agreement very clearly delineates that these are things that will apply with respect to the timing and time to review. And there is a mention about the ADA and the Older Worker Benefit Protection Act. However, the part that's here has nothing to do with whether or not her age discrimination claim. That's a contract term that GE put into the agreement. They are bound by that. It has to be construed against them. If it wasn't unclear, as Judge Cole mentioned, but it's not unclear. She had 21 days to review it and seven days to revoke. There would be no point she would have known when that time would have stopped. They said she left, but the problem is she left because as of the terms on there, that was going to be her last day. So she agreed to do those things, but then GE didn't uphold its end of the bargain. To this day, I still do not have a list of the people who the confidentiality clause was supposed to apply to. Ms. Jackson provided her list. They said that was too expansive. I've never seen anything since then. So that was important to her. We had an email that was discussed at the evidentiary hearing that we had where she indicated that was part of the reason. She's a professional, as they indicated. She was high level, and it was important to her that people not disparage her when she left because people were reaching out to her at that point from GE. So again, I don't think there's any real dispute here as to whether or not there was an agreement. I don't think that there was an agreement. With respect to whether there was a meeting of the minds, I know Judge Cole had found that there was, and again, just to the extent that that bonus discussion was in dispute, my client indicates that that was never raised to her by counsel. She doesn't recall anything about that. She actually got a paycheck after that, after the settlement conference, so it wasn't the case that all payments were done. She was expecting to still receive this. When you say she got a paycheck, that was her regular paycheck from work she had already done. Is that correct? That's correct, Your Honor. Just so I'm clear on one part, so the status here is with the agreement not enforced, and assuming you're to succeed before us, she has no money, but this suit can continue and you may get more or you may get less or you may get nothing. Am I correct with that? Yes, and she was fine with that consequence. Without revealing privilege, I explained that to her, and she was totally fine with that as a consequence. If I could address, because I think Judge Cole's opinion mentions that, that he was going to keep it dismissed, we did have a pending motion to set that aside to the extent he said, I think, as of March of 2020, that they were supposed to have set it aside. To the extent Your Honor wants to address that so that we don't have to come back up here. Has anything happened in this? To the extent there was no settlement, I don't know how it would stay dismissed because there's nothing, it would be unfair to her. She's not had an opportunity to actually receive the benefit of whatever that dismissal of prejudice was supposed to have done. At the evidentiary hearing, he indicated that that would be the result, that we would probably end up having to start over again, and we understood that, but he's indicating his opinion. I didn't raise that because it wasn't something that we... Counsel, has anything, in fact, happened in the district court, then, in terms of restarting the litigation? After we received the opinion, I then filed a motion to set aside under Rule 60, and he declined to do anything about it until after this result, which I understood. He was waiting for the appeal. Okay, thank you. Yes, to the extent that you choose to do something sui sponte about that issue, then I would respectfully request that that be done. That's all. I have nothing further. No questions. Okay, thank you, Ms. Aiken. Appreciate your argument. Ms. Bond? Thank you. Just a few points to make. First, in response to your question, Judge Boggs, in terms of the template agreement that was sent to plaintiff's counsel in advance of the settlement conference, you can find that at page 865 of the record. Okay, thank you. And I want to highlight some of that language. Ms. Aiken's discussed the fact that, well, she received another paycheck. Of course she did. We have to pay her for the time that she worked. The template agreement specifically addresses that and says that, except as stated above, which is the settlement amount, employee agrees with the exception of her final paycheck, she has received all wages and compensation, including but not limited to overtime compensation. Due to her, she is not entitled to any other payments of any kind. Which section is that you're reading from? That is 3A of the template agreement. Thank you. So there can be no legitimate claim that, well, she knew she was still getting her final paycheck, so she thought maybe she was still getting her bonus. It's specifically laid out. Just so I'm clear here, because I think I've been working from perhaps the slightly wrong document, but the document that I'm looking at, which I guess is later, has all of that language struck through in a slightly different language. Was that negotiated, was that in part of the negotiation after the actual conference? Ms. Jackson had asked to tweak that language. We agreed to a certain extent to tweak it, but you'll see in the record, it's Exhibit 2, so it will come right after the template agreement in the record. There's a series of correspondence between Mr. Steinberg and I. I just want to make sure which document I was looking at, and I take your point. So the parties went back and forth starting, I'm thinking it was January, February maybe. So there's the initial template agreement that GE provided at the time or before the mediation, and then there were revisions back and forth, emails back and forth. So yeah, I'm probably working with the same document that Judge Box has. I'm not sure when these revisions occurred. I'll have to take a look and see, because these revisions apparently, these negotiations back and forth were going on for a couple months as I understand it. Not a couple months, Your Honor. So I sent the initial agreement after the settlement of conference on the following Tuesday, January 28th. There were some edits because, as Mr. Steinberg pointed out to me, I had not accurately reflected what the terms of the agreement, I had missed a couple of things. So we revised that, and then we, as I said, there were some language tweaks to ensure that the agreement, the final written agreement was an accurate reflection of what the parties had agreed upon. Was that what was sent on January 31? January 31 was one of the dates that there was an exchange. There were several exchanges on that date. The final agreement was on February 13th, and it was sent to Ms. Jackson by her counsel, and he indicated that she had no further proposed edits to the final agreement. I want to raise this point. Ms. Jackson never indicated an intent to revoke. Not even in response when GE filed a motion to enforce settlement in the summer of 2020, not even in response to that did they raise it. The court, completely on its own, raised the issue of this 21-day review and revoke period. And so it's disingenuous for Ms. Jackson to say, to make any claim, that at any point she indicated an intent to revoke. It was never raised by her. Suppose she takes the position that she never accepted it. Correct. On the non-disparagement piece, she raised that as something where there was no meeting of the minds. Initially, yes, it was agreed that there would be a list. There was never an agreement. If you look at the transcript of the settlement conference, it was not an agreement that we would provide her a list of people that we instructed not to disparage her. It was that there would be an agreement about what that list was. Ultimately, she determined, and again you'll see this in the record in that correspondence back and forth between counsel, she decided that rather than have a list of people by names, she wanted a characterization. It ultimately ended up that she wanted anyone who GE had discussed her claims with to be instructed not to disparage her. GE agreed. That was in the final agreement that was sent to her by her counsel on February 13th. February 13th, is it just coincidental that that is 21 days from the January 23rd settlement conference? I think I have the dates right or within a day or so. It was just coincidence. Because in fact, one of the issues that Ms. Jackson raised when we were tweaking the language of the written agreement was the 21-day language. She was concerned that the way it was worded from the template agreement made it sound like she actually had taken the full 21 days and she wanted it to be clear that she had not. That was what she requested on January 31st. So certainly as of January 31st, she was acknowledging that she had waived the 21-day period, at least as of that date. Why is it that if the language is what it is, why would that be an agreement that she had waived it? The language, she was worried it might have sounded like she was taking the full 21 days. And she wanted it to be clear that she was not taking the full 21 days, that she had considered it for just the period she had and that she was done considering it and hadn't taken the full 21 days. If she was done considering it, why wouldn't she have signed it at that point? That's a mystery. It was never conveyed to GE. But the flip side is if she didn't sign it, that sounds like she's still considering it. Well, I think by her language in asking the change in that agreement, there would be no reason for her to tweak that language if she hadn't finished considering it. And what was the change? I don't have the exact language in front of me, but it was rather than saying that she had 21 days to consider it, I believe we changed it to she had up to 21 days but did not have to use those 21 days, the full 21 days. Right. I can look at it. I mean, we can look at it. Thank you. And just one last point. Be quick, please, because you're over again. I want to point out that the district judge did find, Ms. Aikens pointed out that Ms. Jackson denies that the bonus issue was raised. The district court specifically found that Magistrate Bowman and Mr. Steinberg were more credible on that issue and that finding should be deferred to. Thank you, Your Honor. Thank you, counsel, for your arguments, all of you this morning. We very much appreciate them. Thank you for your briefing. We'll take the case under advisement. Clerk may call the next case.